UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
:
MANGEMENT RECRUITERS :
INTERNATIONAL, INC., *et al.*, :
: CASE NO. 1:13-CV-0244
Plaintiff, :
:
vs. : OPINION & ORDER
: [Resolving Doc. 8]
VAN CORBIN, *et al.*, :
:
Defendants. :
:
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Management Recruiters International Inc., and MRI Contract Staffing, Inc (collectively "MRI") bring this diversity case to collect on fees purportedly owed under franchise agreements between MRI and defendants Van Corbin and the Management Consulting Group, Inc (collectively "Defendants").[1] Corbin moved to dismiss this suit because he says that the amount in controversy does not exceed $75,000, he is not subject to personal jurisdiction in Ohio, and venue is improper in the Northern District of Ohio.[2] In an earlier Opinion and Order, the Court denied Corbin's motion to dismiss based on the amount in controversy. But because neither party properly addressed the dispositive issues regarding personal jurisdiction, the Court ordered the parties to submit supplemental briefing on that issue. With this Opinion and Order the Court **DENIES** Corbin's Motion to Dismiss based on personal jurisdiction and improper venue.

---

[1] [Doc. 1.]

[2] [Doc. 8.]

-1-

Case No. 1:13-CV-244
Gwin, J.

## I. Background

According to the complaint, MRI "franchises the operation of personnel placement services and contract staffing services."[3] MRI says that it entered franchise contracts with Defendants in July 2007 under which Defendants were to pay MRI fees of 7.5% of "cash-in" and make monthly financial reports.[4] MRI says that Defendants have failed or refused to make such payments and reports.[5] MRI seeks damages of over $100,000 plus interest, injunctive relief requiring Defendants to make financial disclosures, and costs and expenses.[6]

Corbin moved to dismiss this suit claiming that this Court lacks personal jurisdiction over Corbin and that venue does not lie in the Northern District of Ohio.[7] Corbin says that he is not subject to personal jurisdiction in Ohio because the forum selection clause in one of the contracts "is incomplete and contrary to public policy" as well as in contradiction to the forum selection clause in another contract.[8] Corbin also says that the proper venue for this matter lies in Virginia.[9] MRI

---

[3] [Doc. 1 at 2.]

[4] [Doc. 1 at 2-3.]

[5] [Doc. 1 at 3-4.]

[6] [Doc. 1 at 5.]

[7] [Doc. 8.]

[8] [Doc. 8 at 2.] The Contract Staffing Agreement says:

LICENSEE hereby irrevocably agrees that any action or proceeding arising out of or relating to this Agreement may be brought in the courts of the State of Ohio or in the United States District Court for the Northern District of Ohio, as MRI CONTRACT STAFFING or BROWNS CANYON may elect. [Doc. 1-4 at 22.]

But the Franchise Agreement says:

FRANCHISEE hereby irrevocably agrees that any action or proceeding arising out of or relating to this Agreement may be brought in the courts of the Commonwealth of Pennsylvania or in the United

(continued...)

Case No. 1:13-CV-244
Gwin, J.

says that this forum selection clause is valid and enforceable, and that it drags with it the other contracts. Because the parties briefing on the effect of the forum selection clause was incomplete and applied the incorrect legal standards, the Court ordered the parties to further brief which state's law controls the interpretation of the forum selection clause and whether that state's law allows this Court to exercise personal jurisdiction over Corbin based on the instant clause.[10]

Unfortunately, the parties' briefing raises more questions than it answers. Defendant Corbin says that since the governing documents contain two forum selection clauses, the documents "can't be relied on" and, so, "the substantial contacts test would be applied as per other contracts," which indicates Virginia law governs the forum selection clause.[11] Yet all of the cases that Corbin cites in support of this argument are personal-jurisdiction cases, not choice-of-law cases. Alternatively, Corbin says, the contracts support arbitration in Ohio under Ohio law.[12] Finally, Corbin says, based on a law review article, that "enforcing any forum selection clause in this context is against public policy and pursuant to that theory, the matter should be sent to the Eastern District of Virginia."[13] Plaintiff MRI says that Ohio's choice of law rules suggest that Ohio law governs this action under the choice of law provision in the arbitration clause of the Contract Staffing Agreement, that Ohio's general choice of law provisions also suggest applying Ohio law, and that Ohio law permits the

---

[8](...continued)
States District Court for the Eastern District of Pennsylvania, as MRI or BROWNS CANYON may elect. [Doc. 1-1 at 28.]

[9][Doc. 8 at 2.]

[10][Doc. 12 at 5.]

[11][Doc. 14 at 2.]

[12][Doc. 14 at 3.]

[13][Doc. 14. at 3.]

Case No. 1:13-CV-244
Gwin, J.

exercise of personal jurisdiction over Corbin based on the forum selection clause.[14]

The Court proceeds as follows: First, the Court applies Ohio's choice of law rules to the text of the choice-of-law provisions in the two contracts. Based on their text, the Court determines that Pennsylvania law governs the interpretation of the forum selection clauses at issue. Second, the Court determines that Pennsylvania law permits this Court to exercise personal jurisdiction over Corbin based on his assent to the forum selection clause in the Contract Staffing Agreement. The Contract Staffing Agreement also specifies that venue lies in this district.

## II. Choice of Law

"When interpreting contracts in a diversity action, [courts] generally enforce the parties' contractual choice of forum."[15] In the Sixth Circuit, however, state law "controls the interpretation of a forum selection clause in a diversity case where enforcement of the clause is necessary for the court to have personal jurisdiction over the defendant."[16] Which state's law depends on Ohio's choice of law rules.[17]

Defendant-Corbin says that Virginia law governs the interpretation of the Contract Staffing Agreement because Virginia has more substantial contact with this case.[18] Corbin leaves this court to divine the authority for his proposed "substantial contact" test. Plaintiff-MRI says that Ohio law defers to the parties' intent, and the Contract Staffing Agreement evinces the parties' intent that Ohio

---

[14] [Doc. 13.]

[15] *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 541 (6th Cir. 2007).

[16] *Preferred Capital, Inc. v. Sarasota Kennel Club*, 489 F.3d 303, 306 (6th Cir. 2007); *see id.* at 307-08.

[17] *See Klaxon Co. v. Sentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941).

[18] [Doc. 14 at 1-2.]

Case No. 1:13-CV-244
Gwin, J.

law should govern this action.[19]

Ohio adopts Section 187 of the Restatement of Conflicts of Law to determine what law governs.[20] "Section 187 provides that, subject to very limited exceptions, the law of the state chosen by the parties to a contract will govern their contractual rights and duties."[21] In this case, the Contract Staffing Agreement specifies that Ohio law governs arbitration, but that provision applies only to an action before an arbiter,[22] and neither party appears to have initiated arbitration in this case.[23] The Franchise Agreement, on the other hand, is significantly broader. It says that "[t]his Agreement and *all matters relating to or arising out of the relationship between the parties* shall be governed in all respects by the laws of the Commonwealth of Pennsylvania applicable to agreements made and to be entirely performed in such state, which laws shall prevail in the event of any conflict of laws."[24] Neither party suggests that the present dispute is not a "matter[] relating to or arising out

---

[19] [Doc. 13 at 2.]

[20] *See Ohayon v. Safeco Ins. Co. of Illinois*, 747 N.E.2d 206, 209 (Ohio 2001).

[21] *Id.*

[22] The agreement says:

The parties agree that the arbitration shall take place in Cleveland, and shall be governed by the law of the State of Ohio and the Ohio Arbitration Laws, and shall be final and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof including a federal district court pursuant to the Ohio Arbitration Laws.

[Doc. 1-4 at 21.] This clause evinces no intent that Ohio law should control anything other than "the arbitration."

[23] The Court notes, without deciding, that the agreement appears to contain an arbitration clause that either party may elect to invoke: "Either party may apply to the American Arbitration Association for a determination of the dispute as set forth in the notification thereof by the originating party." [Doc. 1-4 at 21.] Somewhat incomprehensibly, Corbin suggests that the parties should arbitrate the enforceability of the forum selection clause but not the underlying dispute. [Doc. 14 at 3.] Yet, so far as the Court is aware, Corbin has not actually invoked the clause.

[24] [Doc. 1-1 at 28.] (emphasis added)

Case No. 1:13-CV-244
Gwin, J.

of the relationship between the parties." And neither party suggests that an exception to Restatement § 187 applies to this case.

Yet, oddly, neither party suggests that Pennsylvania law should apply: Corbin says that since the since "the Contracts establishing the relationship can't be relied on, the substantial contacts test would be applied per other contracts."[25] The Court is not sure what this means. His subsequent citations to personal jurisdiction cases only serve to confuse.[26] On the other hand, MRI says, "[t]he choice of law provision in the Franchise Agreement stipulates that Pennsylvania law governs that agreement." This is, of course, only half right, as the agreement speaks to "all matters relating to or arising out of the relationship between the parties."[27] MRI's next sentence, however, draws from this premise that "[a]n Ohio Court would go no further than applying the law chosen by the parties in their contracts, which, in the case of the Contract Staffing agreement, is Ohio law."[28] Again, a half truth, as this provision only speaks to arbitration. Absent from both parties' briefing is any attempt to actually read and interpret the lone choice of law provision that purports to govern "all matters relating to or arising out of the relationship between the parties."

Faced with enforcing the chosen law of one of the parties, or Pennsylvania pursuant to their prior agreement, the Court finds that Pennsylvania law should govern these agreements. Under Restatement 187, "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an

---

[25] [Doc. 14 at 2.]

[26] [Doc. 14 at 2.]

[27] [Doc. 1-1 at 28.]

[28] [Doc 13 at 2.]

Case No. 1:13-CV-244
Gwin, J.

explicit provision in their agreement directed to that issue."[29] The parties could have resolved the law to govern the construction of these agreements and the related forum selection clauses. Indeed, it appears that they did: They chose Pennsylvania law. Neither party gives a persuasive reason for the Court to abrogate their *ex ante* choices and instead apply their *post hoc* reasoning.

### III. Personal Jurisdiction and Venue

Under Pennsylvania law, forum selection clauses are generally enforceable.[30] "[A] forum selection clause in a commercial contract between business entities is presumptively valid and will be deemed unenforceable only when: 1) the clause itself was induced by fraud or overreaching; 2) the forum selected in the clause is so unfair or inconvenient that a party, for all practical purposes, will be deprived of an opportunity to be heard; or 3) the clause is found to violate public policy."[31]

In this case, the Contract Staffing Agreement says:

> LICENSEE hereby irrevocably agrees that any action or proceeding arising out of or relating to this Agreement may be brought in the courts of the State of Ohio or in the United States District Court for the Northern District of Ohio, as MRI CONTRACT STAFFING or BROWNS CANYON may elect.[32]

And the Franchise Agreement says:

> FRANCHISEE hereby irrevocably agrees that any action or proceeding arising out of or elating to this Agreement may be brought in the courts of the Commonwealth of Pennsylvania or in the United States District Court for the Eastern District of

---

[29] Restatement (Second) of Conflict of Laws § 187 (1971).

[30] *See Cent. Contracting Co. v. C. E. Youngdahl & Co.*, 209 A.2d 810, 816 (1965) ("The modern and correct rule is that, while private parties may not by contract prevent a court from asserting its jurisdiction or change the rules of venue, nevertheless, a court in which venue is proper and which has jurisdiction should decline to proceed with the cause when the parties have freely agreed that litigation shall be conducted in another forum and where such agreement is not unreasonable at the time of litigation.").

[31] *Patriot Commercial Leasing Co., Inc. v. Kremer Rest. Enterprises, LLC*, 915 A.2d 647, 651 (Pa. Super. Ct. 2006).

[32] [Doc. 1-4 at 22.]

Case No. 1:13-CV-244
Gwin, J.

Pennsylvania, as MRI or BROWNS CANYON may elect.[33]

Read together, these provisions are clear: Both use permissive language, and both speak to any proceeding "relating to" the respective agreements. This permissive language suggests that disputes "relating to" both agreements "may be brought" in state court in Ohio or Pennsylvania, or in the United States District Courts for the Northern District of Ohio or the Eastern District of Pennsylvania.

Corbin's arguments against enforcing the Contract Staffing Agreement's Ohio forum selection clause are unpersuasive. Corbin does not say he was defrauded. And failure to read is no defense, nor is the failure of the drafter to explain the language where it is unambiguous.[34] Nor can Corbin defeat the forum selection clause by pointing to "lack of contacts . . . the location of witnesses and records . . . and the financial burden," because "'it may be assumed that the plaintiff received under the contract consideration for these things.'"[35] Indeed Pennsylvania even enforces "floating forum selection clauses" that effect a consent to jurisdiction anywhere a contract is assigned,[36] a far greater inconvenience than the multiple forums specified in these agreements.

In sum, the Court finds no reason not to enforce these clauses. The Contract Staffing Agreement suffices to apprise Corbin that he may be hailed into this Court. The Court finds that this

---

[33] [Doc. 1-1 at 28.]

[34] *Id.*

[35] *Autochoice Unlimited, Inc. v. Avangard Auto Fin., Inc.*, 2010 PA Super 221, 9 A.3d 1207, 1216 (Pa. Super. Ct. 2010) (quoting *Cent. Contracting*, 209 A.2d at 816).

[36] *See Susquehanna Patriot Commercial Leasing Co., Inc. v. Holper Indus., Inc.*, 928 A.2d 278, 283 (Pa. Super. Ct. 2007) ("We also disagree with the contention that the clause herein is ambiguous because it fails to give reasonable notice as to the location of any potential action instituted to enforce the lease. The clause states that "all legal actions relating to this lease shall be venued exclusively in a state or federal court located within" the State of the assignee, "such court to be chosen at the Rentor or Rentor's assignee's sole option." It can be readily understood by anyone reading it to mean that the party to the contract has consented to have a breach of contract action pertaining to the lease brought in any state.")

Case No. 1:13-CV-244
Gwin, J.

provision was both an effective consent to personal jurisdiction and a consent to venue in this Court.

### III.

For the foregoing reasons, the court **DENIES** Corbin's Motions to Dismiss.

IT IS SO ORDERED

Dated: May 16, 2013        s/ *James S. Gwin*
       JAMES S. GWIN
       UNITED STATES DISTRICT JUDGE